on behalf of the F. O. H. Mr. Marcus T. Morris, on behalf of the F. L. E. and C. E. L. Lockett. Mr. Morris. Yes. I represent Tracy Badoff and Scott Badoff, the children of Catherine Holmes. Briefly, because I'm sure the court has read the briefs, Catherine and James entered into a proper settlement agreement that was incorporated into a judgment. There was a transcript made in January of 2017. The basis of it was that Ms. Holmes received $180,000 in consideration of her waiver of maintenance and for the quick, clean deeds of the marital home. In May of 2018, Catherine died in Hestown. And the central issue here, Judge, and the crux of this appeal, is does the judgment for legal separation with the incorporated property settlement act as a bar to James going into the probate court to circumvent the property settlement agreement that was entered by the deceased? Is the operative provision here 11.1 in that? It is 11.1 and 11.2, Your Honor. You are absolutely correct. But there are other references in the property agreement that do talk about the permanency of the agreement, that it is not to be changed. And basically what we ask is, there's three questions that we ask. The first one is, could James have gone back into the marital court or divorce court and asked for a modification? And the answer to that is no, based upon the facts of the settlement agreement and the law. The second question is, well, then, could James have gone back into the domestic relations court after the death of Catherine? And the answer to that question is also no, because of the way it's set forth in the agreement and the law, as we cited it. So the third question that begs the issue is, well, then, can James then circumvent this agreement, which is a contract between the two parties, and go into the probate court and then try to recapture 50 percent of the $180,000 that he gave as part of the settlement agreement? Did he agree that that $180,000 was used to buy or was there an agreement that that $180,000 was used for Catherine to buy her second home? Was there an agreement up to that? The home was purchased, I think, after the settlement agreement.   But I think that in the record, I wasn't clear. But in the record, it does show that a certain amount of that money, I'm going to say $105,000, I think it's in my brief, was used to purchase that particular condo by her. Okay. And as we argued, I think based upon statute, that once the funds went to Catherine, they became non-marital funds anyway. But the issue is, and I'm not arguing that James is under the Domestic Relations Act. They're still married. And I'm not arguing that under the Probate Act, he is a spouse. There's no question about that. But the question that we are arguing is that the contract that he entered into bars him from going in and trying to grab 50% of the estate on the guise of being a spouse. And the judge, Justice, excuse me, was correct in that he referenced 11.1 and 11.2 of the settlement agreement, which does use the terminology which would seem to bar them. In fact, it says in 11.2, one of the places, the parties agree that neither party will at any time sue the other party his or her heirs, representatives, or signs to enforce any right relinquished under this agreement. What effect does the language in 11.1 discussing prior to the date of execution of this agreement, what effect does that have on this? I don't think it is anything. Because the way I read it, Your Honor, is that each one gave up certain rights at the time that they executed this agreement. James gave up the right to claim the $180,000 that he gave to Catherine. And Catherine gave up the right to go back and grab the house that she gave the claim deed to. And she cannot go back into the court because of a settlement on her maintenance. Those are two, shall we say, valuable acts of consideration. And when you look up the term heirs, heirs are individuals who by operation of law, and the intestinal law, inherit property of a deceased who dies without leaving a will. So if it was not the intent of the parties to make sure that this document went forward and to protect their estates, then they would use that terminology. And if you look at 11.2, it says, and I'm going to quote that, other parties bound, this agreement binds not only the parties, but also their heirs, executors, administrators, legal representatives, and signs. In addition, this agreement shall inherit to the benefit of the parties, heirs, executors, administrators, legal representatives, and signs. It is clear from that the intent of the parties was that once we separate, we're done. And you can't go back, and if I die, into my estate, and I can't go back into your estate and die. In fact, the court in the transcript, if I may, asked Mr. Horne. Which transcript? Are you talking about in the Family Law Court? Yes, Your Honor. And it is referenced in our brief. It also was in the exhibit. The court asked, and I'm going to say this. Before you go into that, hold your thought. Yes. Are you saying that the terms of this property settlement agreement are ambiguous? No. Then why are we talking about that? Because it is raised by my opponent, who says that that is insufficient as a basis to bar the probate act. To bar, I'm sorry, Mr. Holmes from going into the probate act. But you're relying on the terms of the property settlement agreement, which is unambiguous. Therefore, plural evidence would not be necessary. And what you're citing to us is plural evidence, correct? No, I'm citing to you what's in the document, Your Honor. What's in the transcript. You were about to argue the transcript. No, no. I was about to say in the transcript the judge asked Mr. Holmes, does he understand this is a final, final property settlement? You can't go back. You can't change it. If you get the divorce entered, this is never going to change. All it does is it expresses the intent of the court that it's final and the acknowledgement of Mr. Holmes that it's final. That's the only reason I'm referencing the transcript, Your Honor. The document stands on its own. I think there's sufficient basis in the document that clearly states, but the words heirs and executives, I mean, these are words of our views in cases of inheritance, cases of probate. Mr. Morris, let me ask you this. Is there any difference in light of the fact that this is a legal separation versus a dissolution or a divorce or a prenup, if you will? Your Honor, it's an interesting question. And I've explored that in my brief. And the answer is, in first blush, a divorce is a divorce. It separates the spouses and ends the marriage. A legal separation does not end the marriage, but it does by contract. It can separate the spouses, their property, maintenance, and other issues. And I cited an interesting case on that. I don't recall which one it was off the top of my head. I think it was Sutton. And the other one is Dowdy. Sutton, I think, is the second district case, and Dowdy is the Supreme Court case. But no, I got it reversed. Dowdy is the second district case. But the point is that the parties can, by virtue of their ability to contract with each other, enter into a written agreement, which then binds both of them and separates the properties. That's the essence of this. And the only reason, Your Honor, I referenced the transcript is because the judge went back and made sure that Mr. Holmes understood the finality of this agreement. Also, there was a reason that this was a separation versus a divorce. Was it not so that the wife at the time, Catherine, could maintain his health insurance? Yes. Catherine was suffering from, I think, cancer. And that was the basis, I think, that they maintained the separation agreement. Otherwise the court wouldn't. There was a provision in there that said should one of them want to remarry or he want to remarry, that he would pay her $100 a month to continue with the insurance. Correct me? Yes. You are correct, Your Honor. That is, I think, the justification. Now, I did not try this case in either the divorce court or the probate court. So I'm the appellate lawyer, and I've got the same thing I look at as you look at, Your Honor. But you are correct. That appears to be, for the record, the reasoning behind what happened. Because my gut feeling is if I was the trial lawyer, I would say get divorced and get done with it. But because of the cancer, they couldn't do it. Do you agree that paragraph H is a recital for this country? Paragraph H, I would agree that it is a recital, but I would agree that it shows intent. And I think that's the important thing. Throughout this whole document, there's different references and paragraphs that we cited in our brief that show that the parties intended this to be a final document. And I think that's very important, Your Honor. That, in my mind, is the importance of paragraph H. But I can cite in my briefs I have different sections of the document that repeatedly talk about the finality of the allocation of the property. And if that was the case, that it was to be final, and they referenced the heirs and the states and everything else, then why would they do that and then allow somebody to go into the probate court and circumvent it? And my argument is very simple, Judge. Mr. Holmes could not go back into the divorce case and change this. He couldn't do it. It's physically and legally impossible. So then why would we allow him to go into the probate court and violate an agreement that Mrs. Holmes contracted for? I mean, if this table, if the case was reversed and he died, could she go back into the court and grab back half the house? No. So there's ample basis here, Your Honor, to bar by this agreement Mr. Holmes going into the probate court and circumventing the agreement and grabbing back 50% of the estate. And that's basically your argument. It's very simple. Any other questions, Your Honor? Thank you. You have time for a vote. Thank you, Your Honor. It's been an honor standing here. Good morning. My name is Amy Lynn Lonergan. I represent James Holmes. May it please the Court. I will probably be referring to Ms. Jim throughout the analysis. And our legal principle is very clear. When you get married, the vow is till death do you part. You're married until you die, and you're still married when you die. Yeah, but you can contract away your property rights, can you not? You can. In a legal separation. You absolutely can. And two cases that were cited in the trial court by Mr. and Mrs. Batts, Mr. Matt Dorff and Ms. Batts Dorff, were the Cullen case and the Briseau case. And in both of those, they found, yes, you can contract away things like rights to an estate, but it has to be done in a very clear way. It has to say, I'm specifically giving up rights. It has to, you know, that is what the case is. Well, the Cullen case says you don't need specific language. Where in the Cullen case does it say that you need specific language? It says that you need to have language that is sufficient to interpret that you intend to give away certain rights. How do we not see that even in 3.2 in the property settlement agreement where it states that once the decedent quick claim the marital home to James, the property would become James' sole and exclusive property. So she gives him a quick claim deed. He gives her $180,000. She then takes that $180,000 and buys a home. How is he now, she's not entitled to his because she quick claimed him and it became his sole and exclusive property. How is it now that he's entitled to hers? Well, I guess it could be because she didn't own the house at the time and under Rule 11.2, this contract only concerns things that matters that have occurred prior to the deed. If Jim had sold his home. Prior to the date because after the date they're separated and there's no relationship. They're still legally married. And the probate act says surviving spouse. It doesn't say surviving spouse after they're separated. So wait, if he sold that house and then bought another house and then died before her, she gets half. She would have the right to come into court as his spouse. After she quick claimed in the contract. Not that bolo house. But if he would have sold that house and bought another house. With the full season. The probate act says if you own a property in the state of Illinois and you die with only your name and you have a spouse, your spouse is entitled to half your probate. I think he'd be singing a different tune if the tune were on the other foot. Now, isn't it true, though, that the reason that this was not a divorce versus a separation was because of her cancer and for the insurance? I don't believe it was cancer. I think it was a heart issue, but whatever it was, she was very ill. The reason that there was a legal separation is because it was a legal separation and that's what they wanted. And there are provisions in the health insurance section about how she's going to remain on his health insurance even after they get a divorce. So they could have agreed, let's get a divorce and I'll just pay $100 per month just like it says here. The parties wanted a legal separation, so they got a legal separation. They could have provided for health insurance in a divorce situation. They chose not to. Where's the ambiguity in Article 11? There is none. It says any manner that has occurred prior to the date of this execution. It's concerning the manners that occurred prior to the date of the execution. And the issue about marital property, marital property only comes up in the context of divorce and a legal separation. Marital property is not a term of art in the probate act. So if she had the $180,000, put it in the bank account, and then died, he wouldn't be able to attack that? Arguably no. But because she turned the $180,000 into a house, now he can't because the asset changed. Well, we're getting to how the property is to be divided. That's not what the issue on the appeal is. The only thing that was declared appealable under Section 304b1 was whether or not he's an heir and whether or not he's a surviving spouse. Well, I think that the issue that Justice Burke is asking you goes to the absurdity of your argument. It might be that we're talking about dividing property, but doesn't it go to the absurdity of your argument? Well, we will be litigating how the property is to be divided. And obviously, if there are certain things, like the Toyota RAV4 was clearly Katherine's separate property. So if that was still part of her probate estate, obviously the terms of this PSA would come into play, and he would not be entitled to 50% of the Toyota RAV4. So I believe that once you've converted that money, we don't know whether she used the money from the settlement, whether she hit the lottery. We could assume that just because of proximity and time. But also because of proximity and time, it was only a month after the separation. She hadn't been looking at this property before then. She could have written into this, I'm about to buy a property in Volo, and you're giving up your rights to that. And she chose not to do it. She took the $180,000 in lieu of maintenance, correct? Right. So if she just decided to rent a place and used the $180,000 to basically maintain herself, in lieu of maintenance, but what she did was she bought a house, so instead of paying rent, she's paying a mortgage payment, but now it's not in lieu of maintenance. Right. According to your argument, it's not in lieu of maintenance. Because she's got a house now. She owns the house now, and the house is part of the estate. Once she passes, the estate is a different legal entity than her. Your argument is that the proceeds that she received in the settlement agreement, that because she didn't just leave it alone, she used it to buy something else, he now has a right to claim an interest in that estate. She has a right to claim her estate. That property is part of her estate. Whether or not that particular property is ultimately distributed would be a thing for the trial court to ultimately decide the effect of this PSA on that property. That would be an excellent argument for them to make. I would respond to it. That's not what's up on appeal. What's up on appeal is whether or not 11.1 shows him waiving his statutory spousal award, whether or not he's waiving his rights. And you're submitting that that contract, that PSA, he did not waive his rights. Right. Well, a statutory spousal award is a separate section of the Probate Act. We're talking about just simply the section regarding who's defined as an heir and the laws of intestancy and descendancy. And that's the only thing that's been argued. He hasn't filed a claim for a spousal award. A spousal award is based on maintenance and that sort of thing. So we're not asking about that. But the issue before us today is whether or not the PSA and the separation indicates that the parties intended to waive all interest in each other's property, including any spousal inheritance rights. That's what's before us today. Right. And whether or not we can interpret and whether or not the trial court correctly interpreted the PSA and that legal separation to show that your client had waived his inheritance rights. Right. And we show no language anywhere in here that talks about inheritance rights. And in the case of BESS v. BESS from the Second District in 2006, it stands for the prospect that you can't use an anti-nuptial agreement and interpret giving up rights that weren't specifically bargained for as part of the deal. If they wanted to bargain for him giving up his rights to her estate and vice versa, maybe that $180,000 would have been $100,000. Maybe it would have been, okay, we are going to get a divorce then because why would we not just get a divorce if we're going to do everything that a divorce does? What they're trying to do is convert the legal separation into a divorce, and the two are different things, and they were still legally married. But it's all tied back. I mean, you're kind of making a nuanced argument about whether we're here on this interlocutory appeal about whether he's an heir, separate and apart from this property settlement agreement. But if we agree, if we find that the property settlement agreement applies, then the property settlement agreement in paragraph H talks about taking care of all the property that they have. I mean, there should be no other property outside of this property settlement agreement, correct? All the property that they had at the time of the settlement agreement. The settlement agreement only governs the property that they are talking about. So we're shoring the lotto afterward. Correct. So if we're talking about a gazillion dollars, he gets half the gazillion dollars. If she doesn't put it into a jointly held account or name a beneficiary or wider will or do a trust or do any number of a thousand other things that she could have done prior to her passing, knowing that she had a terminal illness, knowing that she was ill, she chose not to do it. And the law in Illinois says if you choose not to make a choice, you still have decided. We're not here about a hypothetical. Right. Let me give you one anyway. The language of Article 11 is clear, that $180,000 which was used to purchase a home, it was contemplated that the parties would waive all claims regarding that property, correct? He waived all claims to the $180,000. He didn't waive all claims to what would be purchased with the $180,000. Oh, that's a circular argument. Let me ask you this, then. In the PSA, it also says, quote, neither party would at any time sue the other party or his or her heirs to enforce any right relinquished under the PSA. Correct. So you're saying he never relinquished this right. He never relinquished the right to an estate, and she never relinquished the right to his estate. Again, if he hit the lottery and then he passed and it wasn't in a joint account, she would still be his wife. If he sold the Volo house, went and bought another house, it would be in his name only. She would be entitled to make a claim on that. If she did not want him to have access to this house, there's a thousand and one things that she could have, should have, would have done. The Probate Act is clear. We don't look at external income streams. We don't look at whether or not the estate would be insolvent but for a spouse award. The estate of Caffrey, which is the first district case out of 1983, 458 Northeast 2nd, 1127, found that the income stream or the wealth of the surviving spouse is not something you look at in a probate act. The probate court is not a law. It is a court of equity in a way, but it's not the same way as in a family law court where you're looking at there's two spouses and is this equitable, is this fair. It doesn't matter whether it's fair or not. It matters that he was her spouse, and that never changed. This particular section only applies to things that happened before it. If she didn't want him to have access to that, she could have had a number of things to do. She didn't do that. Thank you. You're welcome. Thank you. It's an honor. Yes. Go ahead. I think what we have is that my clients, and I think the document, speaks to the domestic relations court and the agreement as a bar. My opponent starts at the probate court and works backward, but she forgot the problems that are in this agreement, which basically say you can't do what you're trying to do. And when the first justice asked me about paragraph 8, paragraph 8 is very interesting, and I'm just going to read it in here. It says to forever finally settle and adjust between themselves the other rights growing out of the marital or any other relationship now or previously existed between them, and fully and finally settle any and all rights of every kind, nature, and description, whether real, personal, marital, non-marital, or mixed, now owned or which may hereafter be acquired by either of them, which hangs right into what the justice was alluding to in her questioning. So the intent is there, Your Honors, and that the argument that it isn't specific enough, I think, fails by virtue of 11.1 and 11.2, which are very specific. So the issue becomes can people contract their rights? Yes, they can. And the cases we've cited are clear on that issue. And if I may, I have to pull you back, the marriage of Sutton, Supreme Court case, as a husband and wife, even can enter into a binding agreement regarding maintenance, property issues, and financial obligations. I mean, that's basic, basic contract. And for them to argue that he didn't intend to waive off anything that would happen in the event of her death is an argument, I'm sorry, of the absurd, because it's critically. Would you recommend to a divorce lawyer or a family law lawyer to be more specific in a PSA, more specific than they were here? Your Honors, I would not agree with that. You're correct. It would be nice that we would have everything perfect for us when we walk into the appellate court and we can say, here it is, Judge, but I think it's specific enough because it uses terms of argument, such as heirs, executors, representatives. It's clear here that this document was a final document terminating all relationships, other than the fact that they're married. But financially, it says here, and the judge repeated that in the transcript, it's done. No matter what you do, you can't come back. It's finished. So in retrospect, would I have crafted this a little differently? Of course I would. I wasn't there. And also, she probably should have taken the condo in joint tenancy with right of survivorship, I would imagine, or something to that effect, or put it in trust. She should have put it into a trust of some kind, a declaration of trust, and that would have avoided the argument completely. But again, Judge, if she did that, we wouldn't be standing here, and I would have had the honor of talking to all of you. But I think there's sufficient basis in here to bar Mr. Holmes from pulling this off, which is really a travesty of justice when you think about it. I mean, they contracted for it, and this contract survives death based on the cases I cited, and now he runs into the probate court and says, well, now I can't go into the divorce court, but I can fill this, so let me grab back half of it. I mean, that's inequitable and it's wrong. It's a breach of the contract. You're not asking for any sanctions or costs, are you, for making that argument? I mean, it's a legitimate argument. I'm not asking for that, Your Honor. I think, though, in the divorce court, somebody may walk back in there and raise the question, you know, are you in breach of this agreement, and is he out of contempt of the court? It's an indirect civil project. But I'm here to do this, Judge. That's my job. Any other questions, Your Honor? I have none. Thank you. Thank you, Your Honor. I appreciate it. The Court thanks both parties for the quality of their arguments today. The case will be taken under advisement and a written decision.